UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |
| | SECTION "H" (5) |
| THIS DOCUMENT RELATES TO: | JUDGE MILAZZO |
| KATHERINE HERRING, | MAG. JUDGE NORTH |
| Plaintiff(s), | COMPLAINT & JURY DEMAND |
| vs. | |
| SANOFI US SERVICES INC. F/K/A SANOFI-AVENTIS U.S. INC AND SANOFI-AVENTIS U.S. LLC | |
| Defendant(s), | |

### SECOND AMENDED SHORT FORM COMPLAINT[1]

Plaintiff incorporates by reference the Second Amended Master Long Form Complaint and Jury Demand filed in the above referenced case on September 27, 2018 (MDL Doc. 4407), subject to the amendments set forth in paragraph 13 of this Amended Short Form Complaint. Pursuant to Pretrial Order No. 15, this Short Form Complaint adopts allegations and encompasses claims as set forth in the Second Amended Master Long Form Complaint against Defendant(s).

Plaintiff(s) further allege as follows:

1. Plaintiff:

    Katherine Herring

2. Spousal Plaintiff or other party making loss of independent/secondary claim (i.e., loss of consortium): Not applicable

---

[1] (Effective as of January 4, 2019) This version of the Short Form Complaint supersedes all prior versions of the form pursuant to Pretrial Order No. 73. This Court-approved version of the Short Form Complaint is available on the Court's Taxotere webpage and through MDL Centrality.

3. Other type of Plaintiff and capacity (i.e., administrator, executor, guardian, conservator):

   <u>Not applicable</u>

4. Current State of Residence: <u>Florida</u>

5. State in which Plaintiff(s) allege(s) injury: <u>Florida</u>

6. Defendants (check all Defendants against whom a Complaint is made):

   a. Taxotere Brand Name Defendants

   - ✓ A. Sanofi US Services Inc. f/k/a Sanofi-Aventis U.S. Inc.
   - ✓ B. Sanofi-Aventis U.S. LLC

   b. Other Brand Name Drug Sponsors, Manufacturers, Distributors

   - ☐ A. Sandoz Inc.
   - ☐ B. Accord Healthcare, Inc.
   - ☐ C. McKesson Corporation d/b/a McKesson Packaging
   - ☐ D. Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc.
   - ☐ E. Hospira, Inc.
   - ☐ F. Sun Pharma Global FZE
   - ☐ G. Sun Pharmaceutical Industries, Inc. f/k/a Caraco Pharmaceutical Laboratories Ltd.
   - ☐ H. Pfizer Inc.
   - ☐ I. Actavis LLC f/k/a Actavis Inc.
   - ☐ J. Actavis Pharma, Inc.
   - ☐ K. Other:

7. Basis for Jurisdiction:

   - ✓ Diversity of Citizenship
   - ☐ Other (any additional basis for jurisdiction must be pled in sufficient detail as required by the applicable Federal Rules of Civil Procedure:

8. Venue:

District Court and Division in which remand and trial is proper and where you might have otherwise filed this Short Form Complaint absent the direct filing Order entered by this Court:

United States District Court Middle District of Florida

9. Brand Product(s) used by Plaintiff (check applicable):

- ✓ A. Taxotere
- ☐ B. Docefrez
- ☐ C. Docetaxel Injection
- ☐ D. Docetaxel Injection Concentrate
- ☐ E. Unknown
- ☐ F. Other:

10. First date and last date of use (or approximate date range, if specific dates are unknown) for Products identified in question 9:

February 7, 2003-April 11, 2003

11. State in which Product(s) identified in question 9 was/were administered:

Florida

12. Nature and extent of alleged injury (including duration, approximate date of onset (if known), and description of alleged injury:

I experienced hair loss on my head and body after being administered Taxotere and my hair has not grown back.

13. Counts in Master Complaint brought by Plaintiff(s):

- ✓ Count I – Strict Products Liability – Failure to Warn
- ✓ Count III – Negligence
- ✓ Count IV – Negligent Misrepresentation
- ✓ Count V – Fraudulent Misrepresentation
- ✓ Count VI – Fraudulent Concealment
- ✓ Count VII – Fraud and Deceit
- ✓ Other: Plaintiff(s) may assert the additional theories and/or State Causes of Action against Defendant(s) identified by selecting "Other" and setting forth such claims below. If Plaintiff(s) include additional theories of recovery, for example, Redhibition under Louisiana law or state consumer protection claims, the specific facts and allegations supporting additional theories must be pleaded by Plaintiff in sufficient detail as required by the applicable Federal Rules of Civil Procedure.

**Plaintiff adopts the allegations in the second Amended Master Complaint with the exception of the following revisions:**

**Replace paragraph 10 with the following:**

10. Plaintiffs could not, by the exercise of reasonable diligence, have discovered that their usage of Taxotere, Docetaxel Injection, Docetaxel Injection Concentrate, or Docefrez resulted in their injuries. In fact, Defendants have yet to acknowledge that these drugs permanently prevent hair regrowth, and Plaintiffs did not suspect, nor did they have reason to suspect that these drugs prevented hair regrowth or the tortious nature of the conduct causing their injuries until a date prior to the filing of these actions, which is less than the applicable limitations period for filing suit.

**After paragraph 124, add the following:**

124a. The label approved for Taxotere for this indication reflected the medical community's understanding that temporary hair loss is commonly associated with

chemotherapy drugs and provided no information about the risk of permanent alopecia.

124b. In fact, the clinical trial sponsored by Sanofi to support initial approval did not evaluate alopecia as a long-term side-effect of Taxotere.

**Replace paragraph 136 with the following:**

136. Sanofi obtained FDA approval in May 2010 to add language related to pediatric safety and efficacy, including: "The overall safety profile of TAXOTERE in pediatric patients receiving monotherapy or TCF was consistent with the known safety profile for adults." Additional changes to this label included a number of edits described by Sanofi as "housekeeping" that, among other things, deleted the phrase "hair generally grows back" and added "most common side effects of TAXOTERE include: […] hair loss" to the "Patient Information" section of the label. As with previous labels, the May 2010 label provides no information about irreversible or permanent hair loss.

136e. On April 11, 2018, Sanofi submitted a Prior Approval sNDA, request that the Taxotere label be updated to identify adverse events occurring at the conclusion of the follow-up period in TAX 316 in 2010. Among the adverse events identified by Sanofi included 29 patients who had alopecia ongoing at a median follow-up of 10-years. FDA approved Sanofi's proposed label change on October 5, 2018.[2]

**After header "III. Defendants Knew That Taxotere, Docefrez, Docetaxel Injection, and Docetaxel Injection Concentrate May Cause Permanent Alopecia."**

148a. In 1997, Sanofi initiated TAX 316, a self-sponsored clinical trial comparing the effects of a regimen of fluorouracil, doxorubicin, and cyclophosphamide ("FAC") with a regimen of docetaxel, doxorubicin, and cyclophosphamide ("TAC") in

---

[2] https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2018/020449Orig1s079ltr.pdf

5

patients with operable node-positive breast cancer. A total of 1040 patients from 112 centers participated in TAX 316 with 744 patients receiving TAC and 736 receiving FAC. In 2004, an interim analysis of TAX 316's 55-month median follow-up data demonstrated that 3.2% of patients who took Taxotere had persistent alopecia.

**After paragraph 149, add the following:**

149a.  In March 2006, Sanofi's pharmacovigilance department received an inquiry from a physician about the reversibility of alopecia following Taxotere treatment, noting that a patient had been experiencing alopecia since 2004. In response, Sanofi's Global Safety Officer for Taxotere internally acknowledged that cases of irreversible alopecia had occurred during Sanofi's clinical trials for Taxotere and that the medical literature might contain additional reports of irreversible alopecia. Despite this, Sanofi's Global Safety Officer advised against doing a literature search on the topic of irreversible alopecia and Taxotere. In addition, Sanofi withheld this information from the Taxotere label and concealed it from the medical community and consumers, including Plaintiffs.

**After paragraph 152, add the following:**

152a.  By early 2010, Sanofi had received reports from hundreds of women describing their permanent hair loss following treatment with Taxotere. Despite this fact, Sanofi withheld this information from the label and concealed it from the medical community and consumers, including Plaintiffs.

**After paragraph 157, add the following:**

157a.  Later in 2010, Sanofi completed its analysis of the ten-year follow-up results for TAX 316, the clinical trial used to support the adjuvant breast cancer indication. This analysis found that the number of women reporting persisting hair loss

had increased from the 22 patients reported in 2004 to 29 patients out of the 687 patients tracked into follow-up. This represented an increase in the incidence of persistent alopecia from approximately 3% to 4.2%. Sanofi had previously decided in 2009 not to update the U.S. label with the follow-up data from TAX 316. Instead, Sanofi submitted to the FDA only the Final Clinical Study Report for TAX 316, which is over a thousand pages long, without submitting a labeling change. In addition, Sanofi continued to conceal this information from the medical community and consumers, including Plaintiffs.

**Replace paragraph 181 with the following:**

181.   There is no single definition for Permanent Chemotherapy Induced Alopecia and the amount of time to establish permanent hair loss varies from patient to patient, including among Plaintiffs. The scientific literature has variously referred to Permanent Chemotherapy Induced Alopecia as occurring between twelve to twenty-four months following chemotherapy treatment. Some literature has indicated that hair loss can be deemed "persistent" six months beyond the completion of chemotherapy.

181a.   Sanofi has stated in court filings that "persistent" alopecia generally describes hair loss for some duration of time following chemotherapy (e.g., 3 days, 30 days, 3 months, 6 months, etc.) and carries with it the potential for hair regrowth to occur.

181d.   Upon information and belief, the varying definitions of Permanent Chemotherapy Induced Alopecia, as described above, were not reasonably knowable to prescribers or consumers of Taxotere, including Plaintiffs.

**After paragraph 213, add the following: Sanofi Actively Sought to Hide that Taxotere Could Cause Permanent Hair Loss**

> 213a. Sanofi's marketing efforts also affirmatively sought to minimize any association between Taxotere and permanent alopecia.
>
> 213b. According to Sanofi's Global Safety Officer for Taxotere, Sanofi knew that Taxotere could cause permanent hair loss in 2006. Despite this, Sanofi created and published in 2006 an information brochure for oncology nurses that described alopecia as "a common, yet temporary, side effect of some cancer medicines" and provided no information regarding the risk of permanent alopecia associated with Taxotere.
>
> 213j. As a result of Sanofi's fraudulent concealment of the association between Taxotere and Permanent Chemotherapy Induced Alopecia, the medical community and patients, including Plaintiffs, were deprived of adequate information about the drug. Consequently, Plaintiffs were unaware of the connection between their use of Taxotere and their injury of permanent hair loss.
>
> Plaintiff also alleges breach of warranties by Defendants pursuant to F.S.A §§672.313 through 672.315 and violation of F.S.A §501.201 et seq.

14. Name of Attorney(s), Bar Number(s), Law Firm(s), Phone Number(s), Email Address(es) and Mailing Address(es) representing Plaintiff(s):

>> By:  /s/Trevor B. Rockstad
>> MS103614
>> Davis & Crump, P.C.
>> 2601 14th Street
>> Gulfport, MS 39501
>> (228) 863-6000
>> Trevor.Rockstad@daviscrump.com